## Staunton.

### Coffman v. Hopkins and als.

### Absent, *Moncure,* P.

The M N Bank obtained a judgment against S A C, M D C and J N B, partners under the firm name of C & B, the makers, and D R H and A H B, the endorsers, of a negotiable note for $1,496.89, with interest and costs, and execution was levied on property of D R H, who, with the other defendants, executed a forthcoming bond in which E C, Jr., united as his surety. The bond having been forfeited, execution was awarded and levied on property alleged to belong to S A C, and an indemnifying bond was given by D R H to authorize a sale. An injunction to the sale of the property so levied on was then obtained by E B, on the ground that the said property had been conveyed by E C, Jr., to S A C in trust for said E B and others, and the said E C, Jr., became surety in the injunction bond; and the injunction being dissolved, he thereupon paid off the execution in full. Held:

1. Though D R H, as accommodation endorser, stood as surety for the original debtors, he was principal in relation to E C, Jr., on the forthcoming bond. Such being the case, as soon as the bond was forfeited E C, Jr., became bound as such surety for the debt; and if no injunction had been obtained to the enforcement of the judgment on the bond, and E C, Jr., had paid it either with or without execution upon it, D R H would have been bound to indemnify him, and he would have been entitled to be subrogated in equity to the lien of the judgment of the M N Bank, and by that means to subject the land of D R H for his indemnity.

2. The property levied on under the second execution not being the property of any or either of the original debtors for whom D R H was surety, E C, Jr., did not lose his right of subrogation and indemnity by becoming surety in the injunction bond; and the dissolution of the injunction only created a cumulative obligation on him to pay a judgment for which he was already bound as surety.

At the January term, 1878, of the circuit court of Rockingham county, Erasmus Coffman, Jr., filed his petition in a chancery suit therein depending in the name of John H. Hopkins' ex'ors v. David R. Hopkins and others, the object of which suit was to ascertain the liens on the real estate of said D. R. Hopkins, with their priorities, and to restrain any sale of the same under certain deeds of trust executed by said D. R. Hopkins, until all necessary accounts should be taken, etc. The petition alleged that at the February term, 1872, of the county court of said county the Merchants National Bank of Baltimore obtained a judgment against S. A. Coffman, M. D. Coffman and J. N. Bruffy, late partners trading under the firm name of Coffmans & Bruffy, and D. R. Hopkins and A. H. Brewer, upon a protested negotiable note made by Coffmans & Bruffy, and endorsed by D. R. Hopkins and A. H. Brewer, for $1,496.89, with interest and costs. Upon this judgment, which was docketed in April, 1872, an execution was issued and levied on the property of D. R. Hopkins, and in September, 1872, a forthcoming bond was executed by him and the other defendants in the judgment, in which bond the petitioner united, at the solicitation of D. R. Hopkins, as his surety. The forthcoming bond was forfeited, and at the November term, 1872, the county court of said county awarded execution thereupon against all the obligors for $3,500.54, to be discharged by the payment of $1,750.27, with interest and costs, which was paid in full by the petitioner, the amount so paid being $1,845.80, as of March the 10th, 1873. The petitioner claimed this sum with interest and five per cent. damages against the said D. R. Hopkins, and that he was entitled to be subrogated to the lien of the judgment in favor of the Merchants National Bank of Baltimore.

D. R. Hopkins answered the petition, and denied that the petitioner had become his surety in the said forthcoming bond, or that he had solicited him to do so. On the con-

trary, it was insisted that the petitioner, being a son of S. A. Coffman and a nephew of M. D. Coffman, both of whom were principals in said debt, became surety in the forthcoming bond for said S. A. and M. D. Coffman and J. N. Bruffy, who appeared upon the face of the bond to be the principals, just as they were in the original debt. The answer stated that the execution was levied on property of S. A. Coffman amply sufficient to satisfy the debt, and that an indemnifying bond had been executed by the respondent to authorize a sale of said property, but that it was prevented by an injunction obtained at the suit of Emma Bear, and that the petitioner, E. Coffman, Jr., was her surety in the injunction bond. The injunction was dissolved on the 7th of March, 1873, and it was claimed that the petitioner, by thus becoming surety, was compelled to indemnify the sureties of the original debt against all loss or damage; that he could not then claim lien on the land of the respondent, and that whether he paid off the execution with his own funds or with those of his father, he had no right to recover the amount of said execution from the respondent, or to be subrogated to the lien of the Merchants National Bank. The bill of Emma Bear alleged that the property levied on as that of S. A. Coffman had belonged in fact to Erasmus Coffman, Jr., and had been conveyed by him to S. A. Coffman, in trust to secure the payment of money to Emma Bear, Dewitt Coffman, and Mary Coffman, and an injunction was therefore prayed and awarded to prevent a sale under said execution. Depositions were taken to show, among other things, that Erasmus Coffman, Jr., was the surety of D. R. Hopkins in the forthcoming bond aforesaid, and that the property levied on belonged to Erasmus Coffman, Jr.

The cause coming on to be heard on the 2d of July, 1880, the court decreed that Erasmus Coffman, Jr., was not entitled to be subrogated to the lien of the Merchants National

Bank against the lands of D. R. Hopkins, and that the petition be dismissed with costs; and it was further decreed, that the judgment of the said National Bank against the said S. A. Coffman, M. D. Coffman, and Jason N. Bruffy, having been paid by Erasmus Coffman, Jr., surety for Emma Bear, in the injunction bond referred to, the said judgment was not a lien on the lands of D. R. Hopkins, and must be stricken from the report of liens in the cause. From this decree an appeal and *supersedeas* were awarded to Erasmus Coffman, Jr., by a judge of this court.

*John E. Roller, Liggett & Liggett,* for appellant.

*J. S. Harnsberger* and *W. B. Compton,* for appellees.

BURKS, J., delivered the opinion of the court.

It cannot be doubted upon this record that the appellant (Erasmus Coffman, Jr.) was the surety of David R. Hopkins in the forthcoming bond taken on the execution sued out by the Merchants National Bank of Baltimore. The execution was levied on the property of Hopkins, and the bond shows on its face that the appellant was bound thereon as surety, and it is clearly and distinctly proved by the testimony that he bound himself as the surety of Hopkins. The other obligors were all bankrupt or insolvent, and it was at the special instance and request of Hopkins alone that he entered into the bond. As to this, the proof leaves no room for doubt. Though Hopkins, an accommodation endorser, stood as surety for the original debtors, he was principal in relation to the appellant on the forthcoming bond. Such being the case, as soon as the bond was forfeited the appellant became bound as such surety for the debt. *Garland, &c.* v. *Lynch,* 1 Rob. R. 545, 566, 567. If no injunction had been obtained to the enforcement of the judg-

Coffman v. Hopkins and als.

ment on the bond, and the appellant had paid it either with or without execution upon it, it will not be denied that Hopkins would have been bound to indemnify him, and he would have been entitled to be subrogated in equity to the judgment of the bank and by that means subject the land of Hopkins for his indemnity. No authority need be cited for a principle so familiar. It is elementary. Did he lose this equity by entering as surety on the injunction bond? If so, we are at a loss to perceive how. The effect was to restrain the sale of the property levied on, and the condition of the bond was to pay the judgment and costs and damages, if the injunction should be dissolved. It was dissolved, and if the property levied on was the property of any or either of the original debtors for whom Hopkins was surety, the equity of the appellant to subrogation was lost, because by his intervention against the will of Hopkins he prevented the property of the real debtor from being subjected and inflicted a loss and injury upon Hopkins, the surety of such debtor. This is well settled law. Many of the cases decided by this court recognizing this principle are cited in *Harnsberger and others* v. *Yancey and others*, 33 Gratt. 527, 540.

But it turns out that this was not the property of the primary debtors, nor of any of them. An attempt was made to show that it was, but it utterly failed. On the contrary, the proof establishes that it was in truth the property of the appellant, subject to the encumbrance of the deed of trust for the benefit of Miss Bear and others. Hopkins therefore was not prejudiced by the injunction, nor were the appellant's rights affected injuriously by his becoming the surety in the injunction bond. To be sure, the condition being broken, he became bound to pay the judgment. But this was merely a cumulative obligation. He was already bound to pay that judgment, and both obligations were to pay as surety. He afterwards did pay it—paid it

as surety on the forthcoming bond, and therefore as surety for Hopkins. The indemnifying bond given by Hopkins does not alter the case. If no injunction had been obtained, and sale had been made under the levy, it was the appellant's property that would have been sold to satisfy a debt for which he was surety of Hopkins. The payment would still have been a payment by the appellant as surety, and his right of substitution would not have been impaired.

In any view warranted by the record, the appellant is entitled to the relief sought by his petition filed in the cause, and the decree denying it is erroneous and must be reversed.

DECREE REVERSED.